**SMITH v. SPERLING et al.**

Civ. No. 9005.

United States District Court,
S. D. California, Central Division.

Dec. 16, 1953.

**786**

Herman H. Levy, Moss, Lyon & Dunn, Los Angeles, Cal., for plaintiff.

Eugene D. Williams, Harold R. Kelly, Freston & Files, Los Angeles, Cal., for defendants Harry M. Warner, Jack L. Warner and Warner Bros. Pictures, Inc.

Oliver B. Schwab, Beverly Hills, Cal., for defendant Milton Sperling and United States Pictures, Inc.

MATHES, District Judge.

Edward S. Birn, "owner of 400 shares of the capital stock of defendant Warner Bros. Pictures, Inc. * * * since August 21st, 1944," commenced this action in this court on December 15, 1948, "suing derivatively on behalf of and for the benefit of defendant Warner Bros. Pictures, Inc., and the stockholders thereof."

The complaint contains three separate claims or causes of action. The third, alleging a violation of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1, 15, was dismissed without prejudice by order of court prior to trial. Fed.Rules Civ.Proc. rules 23(a) (1) (c), 41(a) (2), (b), 28 U.S.C.A. The second cause of action is asserted against defendants Harry M. Warner and Jack L. Warner alone and is grounded upon alleged violation of "their fiduciary duties as directors" of defendant Warner Bros. Pictures, Inc.

The first cause of action is asserted against all named defendants and the allegations material here are briefly: that defendant Milton Sperling is a son-in-law of defendant Harry M. Warner; that the latter and his two brothers, Albert Warner and defendant Jack L. Warner, "control and dominate Warner Bros." and "actually select, dominate and control the directors and officers of Warner Bros."; that about the summer of 1945 the individual defendants Milton Sperling and Harry M. and Jack L. Warner conspired "to waste * * * and misappropriate the assets and business opportunities of Warner Bros. in favor of, and to further and enrich the private interests of defendant Sperling * * * at the expense of Warner Bros."; that in furtherance of the objects of this conspiracy defendant United States Pictures, Inc. was organized as a Delaware corporation and since September, 1946 defendant Sperling has been the sole stockholder; that "in or about September, 1945, the defendants caused Warner Bros. and United to enter into an agreement" for the production of motion pictures by United at the studios of Warner Bros. upon terms improvident and unfair as to Warner Bros. and unwarrantedly favorable to United; that "demand upon the directors of Warner Bros. to institute this action would be futile * * *"; and that plaintiff "and stockholders similarly situated and Warner Bros. will suffer irreparable damage unless the relief requested herein be granted."

The prayer is that "the defendants account to Warner Bros. * * *"; that "a trust be impressed upon the capital stock and assets of United in favor of Warner Bros."; that "the agreement between Warner Bros. and United * * be cancelled and terminated."

Defendants Harry M. and Jack L. Warner and Warner Bros. joined in an answer denying the substantive allegations of the complaint and pleading affirmatively the bar of California's applicable statute of limitations. Defendants Sperling and United filed an answer to like effect.

The original jurisdiction of this court is invoked upon the claimed ground that "the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between * * * Citizens of different States * * *." 28 U.S.C. § 1332.

It is true, as alleged, that plaintiff is a citizen of New York, that defendants Warner Bros. and United are "corporations incorporated under the laws of * * * Delaware," and that defendants Milton Sperling and Harry M. and Jack L. Warner are citizens of California.

■ Since this court possesses only such jurisdiction as has been conferred by statute, U.S.Const. Art. III; Lockerty v. Phillips, 1943, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 and "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties". Mitchell v. Maurer, 1934, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338, jurisdiction is the threshold issue in every case brought here. State of Rhode Island v. Massachusetts, 1838, 12 Pet. 657, 37 U.S. 657, 720, 9 L.Ed. 1233; Brown v. Keene, 1834, 8 Pet. 112, 33 U.S. 112, 8 L.Ed. 885; Capron v. Van Noorden, 1804, 2 Cranch 126, 6 U.S. 126, 2 L.Ed. 229.

"This question the court is bound to ask and answer for itself, even when not otherwise suggested * * *." Mansfield, Coldwater & L. M. Railway Co. v. Swan, 1884, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462; Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001; St. Paul Mercury Ind. Co. v. Red Cab Co., 1938, 303 U.S. 283, 287–290, 58 S.Ct. 586, 82 L. Ed. 845; McNutt v. Gen. Motors etc. Corp., 1936, 298 U.S. 178, 184–189, 56 S.Ct. 780, 80 L.Ed. 1135; Robinson v. Anderson, 1887, 121 U.S. 522, 7 S.Ct. 1011, 30 L.Ed. 1021; Williams v. Nottawa, 1881, 104 U.S. 209, 211, 26 L.Ed. 719; Minnis v. So. Pac. Co., 9 Cir., 1938, 98 F.2d 913, 915, certiorari denied, 1939, 306 U.S. 631, 59 S.Ct. 461, 83 L.Ed. 1033.

■ While jurisdictional issues in each case are properly triable to the court North Pacific S. S. Co. v. Soley, 1921, 257 U.S. 216, 221–223, 42 S.Ct. 87, 66 L.Ed. 203; Gilbert v. David, 1915, 235 U.S. 561, 566–568, 35 S.Ct. 164, 59 L.Ed. 360; Taylor v. Hubbell, 9 Cir., 1951, 188 F.2d 106, 109, certiorari denied, 1951, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618,

there is no statute or rule of court prescribing "any particular mode in which the question of * * * jurisdiction is to be brought to the attention of the court, nor how such question, when raised, shall be determined." Wetmore v. Rymer, 1898, 169 U.S. 115, 120, 18 S.Ct. 293, 295, 42 L.Ed. 682.

Rule 12(h) directs "that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.Rules Civ.Proc. rule 12(h), 28 U.S.C.A.

Rule 12(d) contemplates a hearing and determination of jurisdictional issues in advance of the trial of other issues. Fed.Rules Civ.Proc. rule 12(d), 28 U.S.C.A.; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, 967; 2 Moore's Federal Practice § 12.16 (2d ed. 1948).

■ And the Supreme Court has declared that: "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 1939, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111; cf. Gulbenkian v. Gulbenkian, D.C.S.D.N.Y. 1940, 33 F.Supp. 19.

■ As a general rule therefore the trial court may, in its discretion, try all issues of fact as to jurisdiction by receiving oral testimony and other evidence, Gilbert v. David, supra, 235 U.S. at pages 566, 568, 35 S.Ct. 164, or by receiving and weighing affidavits, KVOS, Inc., v. Associated Press, 1936, 299 U.S. 269, 277–278, 57 S.Ct. 197, 81 L.Ed. 183; Mechanical Appliance Co. v. Castleman, 1910, 215 U.S. 437, 440–441, 445–446, 30 S.Ct. 125, 54 L.Ed. 272; Wetmore v. Rymer, supra, 169 U.S. at page 119, 18 S.Ct. 293; Fed.Rules Civ.Proc. rule 43(a, e), 28 U.S.C.A.

To borrow language from Land v. Dollar, 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209, "when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion * * * Federal Rules Civil Procedure, rule 12(b), 28 U.S.C.A., the

court may inquire by affidavits or otherwise, into the facts as they exist." 330 U.S. at page 735, note 4, 67 S.Ct. at page 1011.

■ Whether the question be raised by the court or by motion or plea or answer of a party, see Steigleder v. McQuesten, 1905, 198 U.S. 141, 25 S.Ct. 616, 49 L.Ed. 986; Susquehanna & Wyoming Valley R. R. & Coal Co. v. Blatchford, 1870, 11 Wall. 172, 78 U.S. 172, 178, 20 L.Ed. 179; Smith v. Kernochen, 1849, 7 How. 198, 48 U.S. 198, 12 L.Ed. 666, the burden of proof always rests upon the party asserting existence of jurisdiction, KVOS, Inc., v. Associated Press, supra, 299 U.S. at page 278, 57 S.Ct. 197; McNutt v. Gen. Motors etc. Corp., supra, 298 U.S. at pages 189–190, 56 S. Ct. 780; Seslar v. Union Local 901, 7 Cir., 1951, 186 F.2d 403, 407, 30 A.L.R.2d 593, certiorari denied, 1951, 341 U.S. 940, 71 S.Ct. 1000; Barron & Holtzoff, 1 Federal Practice and Procedure (Rules Edition), § 352 (1950 ed., 1952 Supp.). That is to say, it is incumbent upon any party who invokes the jurisdiction of a federal court to establish by a preponderance of evidence all facts "upon which the court's jurisdiction depends". Fed. Rules Civ.Proc. rule 8(a), 28 U.S.C.A.

In the case at bar oral motion was made by the defendants at pretrial hearing to dismiss the action for "lack of jurisdiction over the subject matter", Fed. Rules Civ.Proc. rule 12(b) (1), (d, h), 28 U.S.C.A., upon the ground that requisite diversity of citizenship was lacking at the commencement of the action, in that Warner Bros., a Delaware corporation, must be aligned as a party plaintiff for diversity purposes, thus leaving a New York citizen and a Delaware corporation as plaintiffs and three California citizens and a Delaware corporation as defendants. See Mississippi Pub. Corp. v. Murphree, 1946, 326 U.S. 438, 441, note 2, 66 S.Ct. 242, 90 L.Ed. 185; St. Louis & San Francisco Ry. Co. v. James, 1896, 161 U.S. 545, 562–563, 16 S.Ct. 621, 40 L.Ed. 802; Doctor v. Harrington, 1905, 196 U.S. 579, 586–587, 25 S.Ct. 355, 49 L.Ed. 606; Louisville, Cincinnati & Charleston R. Co. v. Letson, 1844, 2 How. 497, 43 U.S. 497, 554–558, 11 L.Ed. 353; Marshall v. Baltimore & O. R. R. Co., 1853, 16 How. 314, 57 U.S. 314, 325–329, 14 L.Ed. 953.

A trial of the jurisdictional and the statute-of-limitations issues, in advance of trial of the other issues in the case, was ordered.

■ As the parties were aligned by plaintiff, complete diversity of citizenship appeared from the face of the complaint upon commencement of the action. Pacific R. Co. v. Ketchum, 1879, 101 U.S. 289, 298, 25 L.Ed. 932. Prior to trial the original plaintiff, New York citizen Edward S. Birn, died and the Probate Court of California appointed Charles B. Smith as Special Administrator of the estate. Cal.Prob.Code, §§ 460, 463. Smith, a citizen of California, was thereupon substituted as party plaintiff. Fed. Rules Civ.Proc. rule 25(a), 28 U.S.C.A.

■ Where diversity jurisdiction exists at the commencement of an action, a subsequent change of citizenship of one of the parties does not oust it. Wichita R. R. & Light Co. v. Public Utilities Comm., 1922, 260 U.S. 48, 53–54, 43 S.Ct. 51, 67 L.Ed. 124; Louisville N. A. & C. Ry. Co. v. Louisville Trust Co., 1899, 174 U.S. 552, 566, 19 S.Ct. 817, 43 L.Ed. 1081; Clarke v. Mathewson, 1838, 12 Pet. 164, 37 U.S. 164, 171, 9 L.Ed. 1041; Dunn v. Clarke, 1834, 8 Pet. 1, 33 U.S. 1, 2, 8 L.Ed. 845; Mullen v. Torrance, 1824, 9 Wheat. 537, 22 U.S. 537, 538. It follows then that while the citizenship of the administrator at bar would have been a factor if he had originally brought the action, his citizenship as substituted party plaintiff is held not to affect determination as to diversity jurisdiction. See Continental Life Ins. Co. v. Rhoads, 1886, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380; Blake v. McKim, 1880, 103 U.S. 336, 26 L.Ed. 563; Amory v. Amory, 1877, 95 U.S. 186, 24 L.Ed. 428; Rice v. Houston, Adm'r, 1871, 13 Wall. 66, 80 U.S. 66, 21 L.Ed. 484; cf. Jeffcott v. Donovan, 9 Cir., 1943, 135 F.2d 213.

Subject to the exception that diversity jurisdiction can be acquired by dropping parties not indispensable, Dollar S. S. Lines v. Merz, 9 Cir., 1934, 68 F.2d 594; Sechrist v. Palshook, D.C.M. D.Pa.1951, 95 F.Supp. 746; Fed.Rules Civ.Proc. rule 21, 28 U.S.C.A., it is settled that as a general rule all other than mere "nominal" or "formal" parties are to be considered in determining whether there exists the diversity of citizenship required by 28 U.S.C. § 1332. See Hamer v. N. Y. Rys. Co., 1917, 244 U.S. 266, 274, 37 S.Ct. 511, 61 L.Ed. 1125; Waterman v. Canal-Louisiana Bank & Trust Co., 1909, 215 U.S. 33, 47, 30 S.Ct. 10, 54 L.Ed. 80; Geer v. Mathieson Alkali Works, 1903, 190 U.S. 428, 433, 23 S.Ct. 807, 47 L.Ed. 1122; Bacon v. Rives, 1882, 106 U.S. 99, 104, 1 S.Ct. 3, 27 L.Ed. 69; Barney v. Latham, 1880, 103 U.S. 205, 214, 26 L.Ed. 514; Walden v. Skinner, 1879, 101 U.S. 577, 588–589, 25 L.Ed. 963; Horn v. Lockhart, 1873, 17 Wall. 570, 84 U.S. 570, 579, 21 L.Ed. 657; Wood v. Davis, 1855, 18 How. 467, 59 U.S. 467, 469, 15 L.Ed. 460; Wormley v. Wormley, 1823, 8 Wheat. 421, 21 U.S. 421, 451, 5 L.Ed. 651; Schuckman v. Rubenstein, 6 Cir., 1947, 164 F.2d 952.

In order to ascertain whether the Delaware corporation Warner Bros. is an indispensable party to appropriate adjudication of the stockholder's derivative suit at bar, we must look to the law of California, Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to "the entire body of substantive law governing an identical action in the state courts." Ruhlin v. N. Y. Life Ins. Co., 1938, 304 U.S. 202, 209, 58 S.Ct. 860, 862, 82 L.Ed. 1290; and see Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 555–557, 69 S.Ct. 1221, 93 L.Ed. 1528.

Insofar as the first cause of action involves validity of the 1945 agreement between Warner Bros. and United, since that agreement was executed in New York, any cause of action to cancel it presumably arose under New York law. And where suit is brought on a foreign cause of action in the courts of California, substantive matters are held governed by the law of the place where the cause arose, while procedural matters are held governed by California law. Biewend v. Biewend, 1941, 17 Cal.2d 108, 109 P.2d 701, 132 A.L.R. 1264; accord, Restatement, Conflict of Laws § 584 (1934). Moreover, whether a matter in such a suit is substantive or procedural is a question of California law. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; accord, Restatement, Conflict of Laws § 584 (1934).

The courts of California apply to the conduct of foreign corporations doing business within the state, such as Warner Bros. here, the same standard as to domestic corporations. See Turner v. Markham, 1909, 155 Cal. 562, 102 P. 272; Findley v. Garrett, 1952, 109 Cal.App.2d 166, 240 P.2d 421; Angelus Sec. Corp. v. Ball, 1937, 20 Cal.App.2d 436, 67 P.2d 158; cf. Pratt v. Robert S. Odell & Co., 1942, 49 Cal.App.2d 550, 122 P.2d 684; Cal.Corp. Code, § 6601; Ballantine & Sterling, Calif.Corp.Laws, § 410, p. 515 (1949 ed.); see, also, Rogers v. Guaranty Trust Co., 1933, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652; Overfield v. Pennroad Corp., 3 Cir., 1944, 146 F.2d 889, 894–896; Bovay v. H. M. Byllesby & Co., 1943, 27 Del.Ch. 33, 29 A.2d 801, Id., 1944, 27 Del.Ch. 381, 38 A.2d 808, 174 A.L.R. 1201.

Speaking of a stockholder's derivative suit, the California courts have declared that: "A stockholder who institutes it sues purely as a trustee to redress corporate injuries." Whitten v. Dabney, 1915, 171 Cal. 621, 629; 154 P. 312, 315.

Also that: "As a general rule of law * * * where a stockholder of a corporation seeks to maintain an action for a wrong done to the corporation, such stockholder occupies no better or different position with relation thereto than would the corporation itself suing in its own behalf." Reid v. Robinson, 1923, 64 Cal.App. 46, 55, 220 P. 676, 680.

"The fact that a stockholder is the nominal plaintiff does not in any manner enlarge the rights and remedies of the action." Earl v. Lofquist, 1938, 135 Cal. App. 373, 376, 27 P.2d 416, 418.

█ And in cases where the corporation and its board of directors are "wholly under the domination of those who committed the original fraud, the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity * * *." Beal v. Smith, 1920, 46 Cal.App. 271, 279, 189 P. 341, 345. See, also Sutter v. General Pet. Corp., 1946, 28 Cal.2d 525, 530, 170 P.2d 898, 900, 167 A.L.R. 271; Klopstock v. Superior Court, 1941, 17 Cal.2d 13, 17, 108 P.2d 906, 908, 135 A.L.R. 318; Turner v. Markham, supra, 155 Cal. at pages 569, 570, 102 P. at page 275.

The substantive law of New York as to the nature and ownership of the cause of action involved in a stockholder's derivative suit is in all material respects the same as that of California. See Clarke v. Greenberg, 1947, 296 N.Y. 146, 71 N.E.2d 443, 169 A.L.R. 944; Isaac v. Marcus, 1932, 258 N.Y. 257, 179 N.E. 487; Flynn v. Brooklyn City R. Co., 1899, 158 N.Y. 493, 53 N.E. 520; Alexander v. Donohoe, 1894, 143 N.Y. 203, 38 N.E. 263; Earl v. Brewer, 1936, 248 App.Div. 314, 289 N.Y.S. 150, affirmed 1937, 273 N.Y. 669, 8 N.E.2d 339.

█ In the courts of California, then, and New York as well, the plaintiff-stockholder's corporation is the real party in interest and an indispensable party to appropriate adjudication of the action.

This view accords with that expressed in the decisions of the United States Supreme Court. See Cohen v. Beneficial Loan Corp., supra, 337 U.S. at page 548, 69 S.Ct. 1221; Koster v. (American) Lumbermens Mutual Co., 1947, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067; Meyer v. Fleming, 1946, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595; City of Davenport v. Dows, 1873, 18 Wall. 626, 85 U.S. 626, 21 L.Ed. 938; also Lee v. Lehigh Valley Coal Co., 1925, 267 U.S. 542, 45 S.Ct. 385, 69 L.Ed. 782; Hamer v. N. Y. Rys. Co., supra, 244 U.S. at page 274, 37 S.Ct. 511; Dickerman v. Northern Trust Co., 1900, 176 U.S. 181, 188, 20 S.Ct. 311, 44 L.Ed. 423; Blacklock v. Small, 1888, 127 U.S. 96, 8 S.Ct. 1096, 32 L.Ed. 70; Pacific R. R. v. Ketchum, supra, 101 U.S. at pages 298–299, 25 L.Ed. 932; City of Memphis v. Dean, 1868, 8 Wall. 64, 75 U. S. 64, 73–74, 19 L.Ed. 326.

█ As Mr. Justice Jackson wrote in Koster v. (American) Lumbermens Mutual Co., supra: "The cause of action which such a plaintiff brings before the court is not his own but the corporation's. It is the real party in interest and he is allowed to act in protection of its interest somewhat as a 'next friend' might do for an individual, because it is disabled from protecting itself." 330 U. S. at pages 522–523, 67 S.Ct. at page 831.

█ Moreover, as Mr. Justice Douglas said in Meyer v. Fleming, supra: "The corporation is a necessary party. * * * Hence, it is joined as a defendant. But it is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor. * * * The fact that the corporation is nominally a defendant should not lead to any different result. That gives the suit only a difference in form, not a difference in substance." 327 U.S. at pages 167–168, 66 S.Ct. at page 386.

In California, as under our rules, Fed. Rules Civ.Proc. rules 17, 19(a), 28 U.S. C.A., every action must normally be prosecuted in the name of the real party in interest, Cal.Code Civ.Proc. § 367, "but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant * * *." Id. § 382.

█ With respect to "an executor, administrator, guardian, trustee of an express trust," Rule 17 states that each "may sue in his own name without joining with him the party for whose benefit the action is brought * * *." Fed. Rules Civ.Proc. rule 17(a), 28 U.S.C.A.

In such cases, since the person for whose benefit the action is prosecuted need not be joined, the citizenship of the representative who sues, and not that of the beneficiary of the suit, is considered in determining whether diversity jurisdiction exists. See Hamer v. N. Y. Rys. Co., supra, 244 U.S. at page 274, 37 S.Ct. 511; Hess v. Reynolds, 1885, 113 U.S. 73, 76, 5 S.Ct. 377, 28 L.Ed. 927; Knapp v. Railroad Co., 1873, 20 Wall. 117, 87 U.S. 117, 22 L.Ed. 328; Rice v. Houston, Adm'r, supra, 13 Wall. at page 67; Coal Co. v. Blatchford, supra, 11 Wall. 175, 78 U.S. at page 175; Childress v. Emory, 1823, 8 Wheat. 642, 21 U.S. 642, 668–669, 5 L.Ed. 705; cf. In re Moore, 1908, 209 U.S. 490, 28 S.Ct. 585, 52 L.Ed. 904; Mexican Cent. Ry. Co. v. Eckman, 1903, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245; Anglo-California Nat. Bank v. Lazard, 9 Cir., 1939, 106 F.2d 693, 699–700, certiorari denied, 1940, 308 U.S. 624, 60 S. Ct. 379, 84 L.Ed. 521; Mayer v. Cohrs, C.C.E.D.Wash.1911, 188 F. 443.

■ The stockholder's derivative suit is a historical exception to the rule that the action be prosecuted in the name of the real party in interest. The exception permits the stockholder to sue in his own name, but he is required to join the corporation as a party. In City of Davenport v. Dows, supra, 18 Wall. 626, the Court pointed out the reasons in some detail, saying: "It would be wrong, in case the shareholder were unsuccessful, to allow the corporation to renew the litigation in another suit, involving precisely the same subject-matter. To avoid such a result, a court of equity will not take cognizance of a bill brought to settle a question in which the corporation is the essential party in interest, unless it is made a party to the litigation." 18 Wall. at page 627; see also Helm v. Zarecor, 1911, 222 U.S. 32, 36–38, 32 S. Ct. 10, 56 L.Ed. 77; Steele v. Culver, 1908, 211 U.S. 26, 29, 29 S.Ct. 9, 53 L.Ed. 74; Porter v. Sabin, 1893, 149 U.S. 473, 478, 13 S.Ct. 1008, 37 L.Ed. 815; Dewing v. Perdicaries, 1877, 96 U.S. 193, 197–198, 24 L.Ed. 654; cf. Lee v. Lehigh Valley Coal Co., supra, 267 U.S. at page 543, 45 S.Ct. 385; Hamer v. N. Y. Rys. Co., supra, 244 U.S. at pages 272–275, 37 S.Ct. 511; American Bible Society v. Price, 1884, 110 U.S. 61, 3 S.Ct. 440, 28 L.Ed. 70.

■ Clearly then, the corporation for whose benefit a stockholder's derivative suit is brought is an indispensable party to appropriate adjudication of the "matter in controversy", and as such is one of the parties whose citizenship is to be considered and counted in determining whether diversity jurisdiction exists, City of Dawson v. Columbia Trust Co., 1905, 197 U.S. 178, 180–181, 25 S.Ct. 420, 49 L.Ed. 713; Shields v. Barrow, 1854, 17 How. 129, 58 U.S. 129, 139, 145, 15 L.Ed. 158—in determining whether "the matter in controversy * * * is between * * * Citizens of different States", 28 U.S.C. § 1332, "all of whom on one side of the controversy are citizens of different states from all parties on the other side." City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47; Strawbridge v. Curtiss, 1806, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435.

■ It is "the duty of the court in determining whether there was the requisite diversity of citizenship, to arrange the parties with respect to the actual controversy, looking beyond the formal arrangement made by the bill." Helm v. Zarecor, supra, 222 U.S. at page 36, 32 S.Ct. at page 12; and see: Lee v. Lehigh Valley Coal Co., supra, 267 U.S. at page 543, 45 S.Ct. 385; Hamer v. N. Y. Rys. Co., supra, 244 U.S. at page 274, 37 S.Ct. 511; Steele v. Culver, supra, 211 U. S. at page 29, 29 S.Ct. 9; City of Dawson v. Columbia Trust Co., supra, 197 U. S. at page 181, 25 S.Ct. 420; Blacklock v. Small, supra, 127 U.S. at page 104, 8 S.Ct. 1096; Harter v. Kernochan, 1880, 103 U.S. 562, 566, 26 L.Ed. 411.

In the words of Mr. Chief Justice Waite, a federal court should, "for the purposes of jurisdiction * * * ascertain the real matter in dispute, and arrange the parties on one side or the other of that dispute", Pacific R. R. v. Ketchum, supra, 101 U.S. at page 298, 25 L.Ed.

932; "and the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts." Removal Cases, Meyer v. Delaware R. Construction Co., 1879, 100 U.S. 457, 469, 25 L.Ed. 593.

As Mr. Justice Frankfurter observed in City of Indianapolis v. Chase National Bank, supra: "These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the * * * federal courts * * * ." 314 U.S. at page 70, 62 S.Ct. at page 17.

■ One of the first tests to be applied in determining whether a defendant should be aligned with the plaintiff is the prayer for relief. City of Dawson v. Columbia Trust Co. supra, 197 U.S. at pages 180–181, 25 S.Ct. 420; Mahon v. Guaranty Trust etc. Co., 7 Cir., 1917, 239 F. 266, 269. In Steele v. Culver, supra, Mr. Justice Holmes declared for an unanimous Court that: "The omission of any prayer for relief against * * * [a corporate defendant] simply shows that properly it is to be treated as a plaintiff in this case." 211 U.S. at page 29, 29 S.Ct. at page 9. Accord: Lee v. Lehigh Valley Coal Co., supra, 267 U.S. 542, 45 S.Ct. 385; Hamer v. N. Y. Rys. Co., supra, 244 U.S. at pages 272–274, 37 S.Ct. 511. As stated before, the complaint at bar discloses not the slightest pretence of asking relief against Warner Bros. as a party defendant.

But plaintiff contends that a stockholder's derivative action stands as an exception to all rules governing alignment of parties. First cited in support of this contention is Doctor v. Harrington, supra, 196 U.S. 579, 25 S.Ct. 355, which, says plaintiff, holds that the stockholder's corporation, by refusing to sue and disputing or refuting the claim made on its behalf by the suing stockholder, in legal effect aligns itself on the defendants' side of "the matter in controversy". In other words, plaintiff contends in effect that refusal of the corporation to join with the suing stockholder operates as a matter of law, under the rule of Doctor v. Harrington, to align the corporation with the defense for diversity jurisdiction purposes.

The inquiry is thus turned to consider whether the Court has laid down a fixed rule to govern alignment in stockholder's derivative actions, or whether alignment in such cases, as in other cases, turns upon the facts as disclosed by the pleadings and, where available, the evidence.

In Doctor v. Harrington the trial court dismissed "on the ground that it had no jurisdiction upon the fact alleged, and certified to the [Supreme] court the question of jurisdiction." 196 U.S. at page 579, 25 S.Ct. at page 355. It was alleged in the bill of complaint that the complainant stockholders were citizens of New Jersey; that the corporate defendant, on whose behalf they sued to set aside a judgment obtained against it by defendants Harrington, was a New York corporation and hence a citizen of New York as were defendants Harrington. 196 U.S. at page 580, 25 S.Ct. 355.

It was also alleged that "The board of directors of said corporation is under the absolute control and domination of the defendant John Harrington [who], by reason of having possession of a majority of the capital stock * * * likewise controls the action of the stockholders." 196 U.S. at page 582, 25 S.Ct. at page 356.

Reversing the decree dismissing the bill for lack of jurisdiction over the subject matter, the Court said: "The ninety-fourth rule in equity contemplates that there may be, and provides for, a suit brought by a stockholder in a corporation, founded on rights which may properly be asserted by the corporation. And the decisions of this court establish that such a suit, when between citizens of different states, involves a controversy cognizable in a circuit court of the United States. The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff; but the corporation may be under a control antagonistic to him, and made to act in a

way detrimental to his rights. In other words, his interests and the interests of the corporation may be made subservient to some illegal purpose. * * *

"In [City of] Detroit v. Dean, 106 U.S. 537, 1 S.Ct. 560, 27 L.Ed. 300, * * * this court ordered the bill dismissed, not because Dean and the corporation had identical interests, but because the refusal of the directors of the corporation to sue was collusive. * * * Hawes v. Oakland, 104 U.S. 450, 26 L. Ed. 827, was cited, where a like right was decided to exist. See also Dodge v. Woolsey, 18 How. 331, 15 L.Ed. 401; Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; Memphis v. Dean, 8 Wall. [64] 73, 19 L.Ed. 328; Greenwood v. Freight Company, 105 U.S. [13], 16, 26 L.Ed. 963; [City of] Quincy v. Steel, 120 U.S. 241, 7 S.Ct. 520, 30 L.Ed. 624. It was said that in Dodge v. Woolsey, that the refusal of the directors to sue caused them and Woolsey, who was a stockholder in a corporation of which they were directors, 'to occupy antagonistic grounds in respect to the controversy, which their refusal to sue forced him to take in defense of his rights.' Dodge v. Woolsey was modified by Hawes v. Oakland, as to what circumstances would justify a suit by a stockholder if the directors refuse to sue. * * *

"The case at bar is brought within the doctrine of those cases by the allegations of the bill." 196 U.S. at pages 587–588, 25 S.Ct. at page 357.

Thus the Court, applying "the ninety-fourth rule in equity" as a federal rule of substantive law, see Swift v. Tyson, 1842, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865; Venner v. Great Northern Ry., 1908, 209 U.S. 24, 33, 35, 28 S.Ct. 328, 52 L.Ed. 666, held that the facts alleged were sufficient to invoke both the diversity and the equity jurisdiction of the Federal court. See Matthews v. Rodgers, 1932, 284 U.S. 521, 524, 52 S.Ct. 217, 76 L.Ed. 447; Twist v. Prairie Oil & Gas Co., 1927, 274 U.S. 684, 689–692, 47 S. Ct. 755, 71 L.Ed. 1297; Venner v. Great Northern Ry., supra, 209 U.S. at pages 34–35, 28 S.Ct. 328. That is to say, the court took as true the facts alleged in the bill of complaint, and in effect held that the complaining stockholders not only met the requirements of Equity Rule 94, but further showed that the corporation was "under a control antagonistic" to its own financial interests and should not, because of such incapacity, be aligned with the plaintiffs in determining whether diversity jurisdiction existed.

In the earlier case of Hawes v. Oakland, 1881, 104 U.S. 450, 26 L.Ed. 827, the complaining stockholder of Contra Costa Water-Works Company, a California corporation, was a citizen of New York. The named defendants, including the city of Oakland, the Water-Works corporation and its directors, all were citizens of California.

The bill of complaint alleged that the corporation had refused to cease furnishing the city of Oakland a free supply of water under disputed provisions of a contract between the Water-Works Company and the city. "To this bill the Water-Works Company and the directors failed to make answer; and the city of Oakland filed a demurrer, which was sustained by the court and the bill dismissed." 104 U.S. at page 451.

Upon sustaining the city's demurrer and dismissing the bill of complaint on the merits, Judge Sawyer of the Circuit [trial] Court did not refer to jurisdiction or alignment of parties. See Hawes v. Contra Costa Water Co., C.C.S.D.Cal. 1878, 11 Fed.Cas. p. 862, No. 6,235. The fact that the Removal Cases, supra, 100 U.S. 457, were not decided until 1879, a year later, may account for Judge Sawyer's failure to realign the Water-Works Company with the complainant and dismiss the bill for lack of jurisdiction over the subject matter.

Some three years following his decision of the Hawes case, in a stockholder's derivative suit brought by Dannmeyer, an alien, against Consolidated Virginia Mining Company, a California corporation, and California citizens Coleman, Flood, Fair, Machay, et al., Judge Sawyer, after citing the Removal Cases, wrote: "The complainant Dannmeyer's

interest as a stockholder is only secondary and derivative, and merely incidental to that of the corporation. Transferring the corporation from the side of the defendant to that of the complainant, who is simply using the corporation and litigating in his own name, and actually in behalf of the corporation and for its own benefit, as is suggested in the Removal Cases, should be done for the purpose of determining the question of jurisdiction, and we have an alien and a California corporation on one side, and several California corporations and citizens on the other. Does not this oust the jurisdiction?" Dannmeyer v. Coleman, C.C.D.Cal.1882, 11 F. 97, 103:

Whatever may have been the reasons for Judge Sawyer's omission to dismiss the Hawes case for want of jurisdiction, still other reasons served Mr. Justice Miller, speaking for the Court upon appeal from Judge Sawyer's decree dismissing the bill on the merits, to affirm the dismissal, not upon the merits, but upon the ground that the bill showed upon its face a want of equity.

Four years previous to his opinion in Hawes v. Oakland, Mr. Justice Miller, sitting as Circuit Justice in the Circuit Court of the District of Colorado, heard a motion to remand to the state court a stockholder's derivative suit, and upon denying the motion wrote: "The suit in this case is brought, as the parties concede, and as the petition shows, by the commissioners of the county of Arapahoe, who are citizens of the state of Colorado, against the Denver Pacific Railway and Telegraph Company, which is also a citizen of Colorado, and against two gentlemen, Mr. Sayre and Mr. Moffat, who are citizens of Colorado, and against seven or eight other persons, who are citizens of other states than Colorado. The case has been removed to this court upon a petition setting forth substantially these facts, and it is now asked to be remanded because the requisite essentials, as prescribed by the act of congress conferring jurisdiction upon this court, are not found in this case. The objection is that the Denver Pacific Railway and Telegraph Company, Sayre and Moffat, are citizens of the same state with the complainants in this action. * * * It is further alleged, in support of the objection to the jurisdiction of this court in this case, that the Denver Pacific Railway Company, and Sayre and Moffat, each of them, are necessary adverse parties to the complainants in this suit. The objection, if well taken, will require the suit to be remanded.

"The reply is that the Denver Pacific Company, and Sayre and Moffat, are nominal parties, against whom no relief is sought, and against whom no decree can be rendered; that the bill is clear and specific on that point; consequently the right which belongs to the other parties to remove the case is not and cannot be defeated by the joinder in the petition of other defendants, citizens of the same state with the complainants, against whom no relief is prayed. As regards Sayre and Moffat, the case seems very clear. A careful reading of the bill shows that no relief can be had against them. * * *"

Confronting the problem of alignment for jurisdictional purposes, Mr. Justice Miller continued: "The case then rests upon the question of whether the fact that the Denver Pacific Railway Company is a party defendant, and is a citizen of the same state of the party plaintiff, ousts the jurisdiction of this court or defeats the right of removal of the other parties who are citizens of other states. That question does not rest upon the same principle as the case of Messrs. Sayre and Moffat. The Denver Pacific Railway Company is a necessary party to this suit; it is one without which the suit cannot proceed. The main object of this suit * * * is to obtain an accounting * * *. The relief * * * asked is a decree in favor of the Denver Pacific Railway Company for the amount found due upon that accounting. The Denver Pacific Railway Company is a necessary party to that accounting. A party cannot be required

to go to all the trouble of accounting and having a decree, when that accounting and decree will not be a valid defence against the principal party having the right to call such party to account. * * * This shows very clearly that the Denver Pacific Railway Company is not a mere nominal party, but is an indispensable party. But, as already stated, the main relief sought in this case will be, if the suit is successful, a decree in favor of the Denver Pacific Railway Company for the amount found due from the other defendants in this case. That is an important and significant feature of the transaction. * * * [I]t is very clear that the interest of the Denver Pacific Railway Company is the interest of the plaintiffs; that their interest is identical—that the board of county commissioners are using the name of the Denver Pacific Company to carry on this suit solely for the benefit of that company. * * * The complainants recognize this themselves, for in their prayer for relief they say expressly what they pray for is a decree in favor of the Denver Pacific Railway Company against the Kansas Pacific Railway Company and the other defendants. Now, the controversy in this case is one in which the commissioners of Arapahoe county and the Denver Pacific Railway Company are on one side, citizens of the state of Colorado, against all the other defendants. * * *

"The best judgment I am able to give is that this is a controversy between citizens of the state of Colorado on one side, and citizens of other states on the other side, and is properly subject to removal." Arapahoe County v. Kansas Pac. Ry. Co., C.C.D.Colo.1877, 1 Fed.Cas. No.502, pp. 1080, 1081–1083.

It is interesting that Mr. Justice Miller wrote this opinion in Arapahoe County two years before the Removal Cases were decided. Since both Arapahoe, 1 Fed.Cas. p. 1080, and the Removal Cases, 100 U.S. 457, were decided under the Act of March 3, 1875, 18 Stat. 470, it seems safe to conclude that the former served as a forerunner to the latter, in which the Court declared for the first time that: "Under the new law the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts." 100 U.S. at page 469.

Two years later, when Mr. Justice Miller came to write the opinion in Hawes v. Oakland, he omitted to cite or mention the realignment rule of either Arapahoe or the Removal Cases and does not indeed appear to have considered dismissal for lack of jurisdiction over the subject matter rather than for want of equity, notwithstanding reference in the opinion to the Act of March 3, 1875, 18 Stat. 470. Rather, he referred back to and distinguished Dodge v. Woolsey, 1855, 18 How. 331, 59 U.S. 331, 15 L.Ed. 401, where both diversity and equity jurisdiction were sustained in a stockholder's derivative suit brought by Woolsey, a Connecticut stockholder of an Ohio banking corporation, against Dodge, an Ohio tax collector, "the directors of the bank, and the bank itself, defendants." 59 U.S. at page 336. "To this bill the defendant, George C. Dodge, filed an answer. The other defendants did not answer. He admits the material allegations of the bill, except the allegation that the tax law * * * is unconstitutional * * *." 59 U.S. at page 339.

It is true, as Mr. Justice McKenna pointed out in Doctor v. Harrington, supra, 196 U.S. 579, 25 S.Ct. 355, that: "It was said that in Dodge v. Woolsey, that the refusal of the directors to sue caused them and Woolsey, who was a stockholder in a corporation of which they were directors, 'to occupy antagonistic grounds in respect to the controversy, which their refusal to sue forced him to take in defense of his rights.'" 196 U.S. at page 588, 25 S.Ct. at page 357.

The quoted statement from Dodge v. Woolsey was made by Mr. Justice Wayne in disposing of an "imputation of contrivance" between Woolsey and the directors of the bank to give the federal court jurisdiction "on account of their residence and citizenship being in dif-

ferent states." 18 How. at pages 345–346.

In comparing Hawes v. Oakland and Dodge v. Woolsey, it is of assistance to keep in mind that the latter was decided "under the old law," and that, as stated in the Removal Cases: "Under the old law the pleadings only were looked at, and the rights of the parties in respect to a removal were determined solely according to the position they occupied as plaintiffs or defendants in the suit." 100 U.S. at page 469.

As authority for the statement last above quoted, the Court in the Removal Cases cites Coal Co. v. Blatchford, supra, where Mr. Justice Field observed that "In Osborn v. Bank of United States, 1824, 9 Wheat. 738, 22 U.S. 738, 857, 6 L.Ed. 204, the Chief Justice laid it down as a universal rule that, in controversies between citizens of different States, the jurisdiction of the Federal courts depended not upon the relative situation of the parties concerned in interest, but upon the relative situation of the parties named in the record." 11 Wall. at page 175.

Thus at the time of Dodge v. Woolsey the Court had no power to consider realignment of the parties—"the pleadings only were looked at." Removal Cases, supra, 100 U.S. at page 469. But such power did exist at the time Hawes v. Oakland was decided, and it is clear from Arapahoe and the Removal Cases that the Court was then mindful of realignment.

The tenor of the opinion in Hawes v. Oakland indicates that the Court deliberately chose that case as the springboard for a new rule of substantive law, Swift v. Tyson, supra, 16 Pet. 1, to curb the then prevalent evils of collusive maintenance of derivative suits by stockholders in federal courts. 104 U. S. at pages 459–462; see 18 Stat. 470, 472 (1875); cf. 28 U.S.C. § 1359.

So instead of realigning the parties and dismissing for lack of jurisdiction over the subject matter, the Court affirmed dismissal of the bill, not on the merits, but for want of equity, "because the appellant shows no standing in a court of equity—no right in himself to prosecute the suit." 104 U.S. at page 462; see Venner v. Great Northern Ry. Co., supra, 209 U.S. at page 34, 28 S.Ct. 328; cf. Bourdieu v. Pacific Oil Co., 1936, 299 U.S. 65, 70–71, 57 S.Ct. 51, 81 L.Ed. 42; Joint Anti-Fascist Comm. v. McGrath, 1951, 341 U.S. 123, 150–157, 71 S.Ct. 624, 95 L.Ed. 817 (concurring opinion).

At the same October Term, 1881, Mr. Justice Miller, in an opinion, Huntington v. Palmer, 1881, 104 U.S. 482, 26 L.Ed. 833, affirming a decree dismissing for want of equity a stockholder's derivative suit similar to Dodge v. Woolsey, supra, 18 How. 331, said: "There is here no formal written appeal to the board * * * and there is nothing to repel the reasonable presumption that parties were improperly and collusively made in order to invoke the jurisdiction of the Federal court." 104 U.S. at page 484.

Later in the same term, Mr. Justice Miller wrote the opinion in Greenwood v. Freight Co., 1881, 105 U.S. 13, 26 L. Ed. 961, in which the Court, without discussing possible realignment of the parties or any jurisdictional issue, held that the stockholder's bill of complaint met the substantive requirements specified in Hawes v. Oakland, supra, 104 U.S. at pages 460–461, but affirmed the trial court's decree sustaining a demurrer and dismissing the bill for want of equity. 105 U.S. at pages 16, 24. See, seriatim City of Detroit v. Dean, 1882, 106 U.S. 537, 1 S.Ct. 560, 27 L.Ed. 300; Central R. Co. of New Jersey v. Mills, 1885, 113 U.S. 249, 5 S.Ct. 456, 28 L.Ed. 949; Mills v. Central R. Co. of New Jersey, C.C.D.N.J.1884, 20 F. 449, 451; East Tenn., V. & G. Railroad v. Grayson, 1886, 119 U.S. 240, 243, 7 S.Ct. 190, 30 L.Ed. 382; cf. Smith v. McKay, 1896, 161 U.S. 355, 357, 16 S.Ct. 490, 40 L.Ed. 731; In re Lehigh Min. & Mfg. Co., 1895, 156 U.S. 322, 327, 15 S.Ct. 375, 39 L.Ed. 438.

Of next importance to the problem at bar is City of Quincy v. Steel, 1887, 120 U.S. 241, 7 S.Ct. 520, 30 L.Ed. 624, which was a stockholder's derivative suit brought in the Southern District of Illinois by a citizen of Alabama against the city of Quincy and the Quincy Gas Light and Coke Co., an Illinois corporation. A demurrer interposed by the city of Quincy was overruled, "the city refused to plead further, and decree was thereupon rendered against it." 120 U.S. at page 243, 7 S.Ct. at page 522. Upon appeal by the city the decree was reversed and the case remanded with instructions to sustain the demurrer and dismiss the bill on the merits.

Speaking again for the Court, Mr. Justice Miller said: "Prior to 1875 cases had come into the courts of the United States, especially into the Circuit Courts, where citizenship had been simulated, and parties improperly made or joined either as plaintiffs or defendants, for the purpose of creating a case cognizable in the circuit courts originally, or removable thereto from the state courts; and, as it very frequently occurred that both plaintiffs and defendants were willing to seek that court in preference to the state courts, it had been found very difficult to prevent these improper cases from being tried in those courts. In the act of March 3, 1875 [18 Stat. 470, 472], an attempt was made to correct this evil, and, by the fifth section of that act, it was declared 'that if, in any suit * * * it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit, or remand it to the court from whence it was removed, as justice may require.'

"In the cases of Hawes v. Oakland, 104 U.S. [450] 456, [26 L.Ed. 827] and Huntington v. Palmer, [104 U.S.] 482 [26 L.Ed. 833]," Mr. Justice Miller continued, "the question of the growth of the form of invoking federal jurisdiction, where it does not otherwise exist, by the attempt of a corporation, which cannot sue in the federal court, to bring its grievance into that court by a suit in the name of one of its stockholders who has the requisite citizenship, was very much considered. In order to give effect to the principles there laid down, this court at that term adopted rule 94 of the rules of practice for courts of equity of the United States, which is as follows: 'Every bill brought by one or more stockholders in a corporation, against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law; and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance. It must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action.' [104 U.S. ix–x.]

"The bill in the present case, although verified by oath, is far from complying with the letter or the spirit of this rule." 120 U.S. at pages 244–246, 7 S.Ct. at pages 522, 523.

The 94th Equity Rule, so conceived, was later embodied in Equity Rule 27 and is now incorporated in Rule 23(b) of the Federal Rules of Civil Procedure. See Notes of Advisory Committee following rule 23, 28 U.S.C.A. Since it was not until 1938 that Erie R. R. Co. v. Tompkins, supra, 304 U.S. 64, 58 S.Ct. 817, overruled Swift v. Tyson, supra, 16 Pet. 1, Equity Rule 94 and successor

Equity Rule 27 are to be considered as embodying both substantive and adjective law. See Hawes v. Oakland, supra, 104 U.S. at pages 459–461; Quincy v. Steel, supra, 120 U.S. at pages 244–248, 7 S.Ct. 520; Notes of Advisory Committee following rule 23, 28 U.S.C.A.

Thus the Act of March 3, 1875, 18 Stat. 470, 472, in effect foreclosed the equity jurisdiction of the Federal courts to every stockholder's derivative suit in which the complaining stockholder failed to establish lack of collusion. Consequently, whenever the allegations of the stockholder's bill of complaint were found insufficient to negative collusion under Equity Rule 94, or successor Rule 27—insufficient to show "standing in a court of equity * * * right in himself to prosecute the suit" Hawes v. Oakland, supra, 104 U.S. at page 462—the suit was dismissed for want of equity, and it was never considered necessary to raise the question of proper alignment of parties, since the allegations of the bill were always taken as true upon the demurrer for want of equity. See, e. g. City of Chicago v. Mills, 1907, 204 U.S. 321, 27 S.Ct. 286, 51 L.Ed. 504; Illinois Central R. Co. v. Adams, 1901, 180 U.S. 28, 38, 21 S.Ct. 251, 45 L.Ed. 410; Lehigh Mining & Mfg. Co. v. Kelly, 1895, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; cf. Niles-Bement-Pond Co. v. Iron Moulders Union, 1920, 254 U.S. 77, 81–82, 41 S.Ct. 39, 65 L.Ed. 145; Helm v. Zarecor, supra, 222 U.S. at page 35, 32 S.Ct. 10.

Venner v. Great Northern Ry., supra, 209 U.S. 24, 28 S.Ct. 328, explains this practice. There, in the language of Mr. Justice Moody: "The [plaintiff], a citizen of New York, brought * * * suit in equity in the supreme court of New York against the defendant railroad, a citizen of Minnesota, and the other defendant, its president, also a citizen of Minnesota. The complaint set forth in substance * * *: The plaintiff was a stockholder in the defendant railroad at the time of the beginning of the suit in 1906. * * * The defendant James

J. Hill was a director and the president of the other defendant, the Great Northern Railway Company, and that railroad and its board of directors were under his absolute control. While holding these offices and exercising this control, in 1900 and 1901, Hill purchased, or caused to be purchased * * * stock of the Chicago, Burlington, and Quincy Railroad Company of the par value of $25,000,000 * * * with the design of selling the stock at a higher price to the company of which he was * * * president. Subsequently, in 1901, while still holding his offices in the Great Northern Railway and exercising the same control over that corporation, he sold to it a large amount of the stock * * * and made an unlawful profit of $10,000,000 on the transaction. * * * The prayer was that Hill should account for his profit and pay it to the Great Northern Railway Company with interest, and for general relief. On the defendants' petition the case was removed to the United States circuit court for the southern district of New York, on the ground of diversity of citizenship * * *. The complaint did not conform to the requirements of the 94th equity rule, relating to suits of this nature * * *. The defendants then demurred separately to the bill * * *. Thereafter the plaintiff moved to remand the cause to the state court * * *. This motion was denied. The demurrer was sustained and the bill dismissed [for want of equity]. * * * The case comes here on direct appeal from the circuit court on the question of jurisdiction alone, certified * * *."

The opinion by Mr. Justice Moody proceeds: "First, was there a controversy between citizens of different states? * * * Let it be assumed for the purposes of this decision that the court may disregard the arrangement of parties made by the pleader, and align them upon the side where their interest in and attitude to the controversy really places them, and then may determine the jurisdictional question in view of

this alignment. Removal Cases, 100 U.S. 457 * * *. If this rule should be applied it would leave the parties here where the pleader has arranged them. It would doubtless be for the financial interests of the defendant railroad that the plaintiff should prevail. But that is not enough. Both defendants unite, as sufficiently appears by the petition and other proceedings, in resisting the plaintiff's claim of illegality and fraud. They are alleged to have engaged in the same illegal and fraudulent conduct, and the injury is alleged to have been accomplished by their joint action. The plaintiff's controversy is with both, and both are rightfully and necessarily made defendants, and neither can, for jurisdictional purposes, be regarded otherwise than as a defendant. * * * The case of Doctor v. Harrington is precisely in point on this branch of the case, and is conclusive. * * *"

Turning to Equity Rule 94 and the cases which gave rise to it, the opinion continues: "Second. Did the circuit court have jurisdiction of the subject matter of the litigation? It has already been shown that the plaintiff in his petition did not bring this case within the terms of the 94th rule in equity * * *. It may be noted that the plaintiff in Doctor v. Harrington complied with the requirements of the rule. It is argued that a compliance with that rule is essential to the jurisdiction, and that a controversy of the general nature contemplated by the rule is beyond the jurisdiction of the circuit court unless the plaintiff shows the existence of all the facts which the rule makes indispensable to his success in the suit. But this argument overlooks the purpose and nature of the rule. The rule simply expresses the principles which this court, after a review of the authorities, had declared in Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827, to be applicable in the decision of a stockholder's suit of the kind now under consideration. Neither the rule nor the decision from which it was derived deals with the question of

the jurisdiction of the courts, but only prescribes the manner in which the jurisdiction shall be exercised. If a controversy of this general nature is brought in the circuit court and the necessary diversity of citizenship exists, but, upon the pleadings or the proof, it appears that the plaintiff has not shown a case within the decision in Hawes v. Oakland, or the rule of court declaratory of that decision, the bill should be dismissed for want of equity, and not for want of jurisdiction. * * * So it was that in Hawes v. Oakland the demurrer was sustained and the bill dismissed, not for want of jurisdiction, but, in the words of the court [104 U.S. at page 462], 'because the appellant shows no standing in a court of equity,—no right in himself to prosecute this suit.' The same order was made in Huntington v. Palmer, 104 U.S. 482, 26 L.Ed. 833, and Quincy v. Steel, 120 U.S. 241, 7 S.Ct. 520. This very question was considered by the court in Illinois Central Railroad Company v. Adams, 180 U.S. [28], at page 34, 21 S.Ct. [251], 253, 45 L.Ed. [410] 412, where it said: ' * * * At common law neither an infant, an insane person, married woman, alien enemy, nor person having no interest in the cause of action, can maintain a suit in his or her own name; but it never would be contended that the court would not have jurisdiction to inquire whether such disability in fact existed, nor that the case could be dismissed on motion for want of jurisdiction * * *. The objection that plaintiff has failed to comply with the 94th rule may be raised by demurrer, but the admitted power to decide this question is also an admission that the court has jurisdiction of the case.'" 209 U.S. at pages 28–35, 28 S.Ct. at pages 330, 331. See Simpson, Fifty Years of American Equity, 50 Harv.L. Rev. 171, 190, n. 121 (1936).

Next cited by plaintiff at bar is Cutting v. Woodward, 9 Cir., 1918, 255 F. 633. There Illinois stockholders sued a California corporation and a California citizen, the appellant. The Court of Ap-

peals said: "The court below found that during all this period the appellant had virtual control of the majority of the board of directors, and that they were ever ready to do his bidding. These transactions constitute actual and not constructive fraud.

"The trust company raises the question of jurisdiction, asserting that the company is not an adversary party to the plaintiffs in the suit, but is the real party in interest as plaintiff, and that consequently there is no diversity of citizenship. But this is not a case in which the trust company, although made a defendant, should be realigned as a plaintiff, as in Hamer v. New York Railways, 244 U.S. 266, 274, 37 S.Ct. 511, 61 L.Ed. 1125. Here the attitude of the trust company is hostile to the plaintiffs. It appeared in a joint answer with the appellant, and by the same counsel, and it denied the allegations of the bill and prayed for the dismissal thereof. The cause is therefore one in which plaintiffs, citizens of Illinois, bring suit against defendants who are citizens of California. Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606; Venner v. Great Northern Railway, 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666 * * *." 255 F. at page 635. See Cutting v. Bryan, 9 Cir., 1929, 30 F.2d 754, 758; cf. Minnis v. Southern Pac. Co., supra, 98 F.2d at page 915.

What then is to govern alignment of parties in a stockholder's derivative suit where, as is the usual case, federal jurisdiction is invoked upon the ground of claimed diversity of citizenship?

Recalling that in Doctor v. Harrington, supra, where the stockholders' bill of complaint alleged that the "board of directors * * * is under the absolute control and domination of * * * John J. Harrington [who] by reason of having possession of a majority of the capital stock * * * likewise controls the action of the stockholders", 196 U.S. at page 582, 25 S.Ct. at page 356, the Court, faced with answering the certified question of jurisdiction, as to "Whether * * * the complainants'

bill * * * showed * * * diversity of citizenship * * *" 196 U.S. at page 579, 25 S.Ct. at page 355, observed: "The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff; but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights. In other words, his interests and the interests of the corporation may be made subservient to some illegal purpose." 196 U.S. at page 587, 25 S.Ct. at page 357.

Recalling that in Venner v. Great Northern Ry., supra, where the stockholders' bill of complaint alleged that "defendant James J. Hill was * * * the president of the other defendant, the Great Northern Railway * * * and that railroad and its board of directors were under his absolute control", 209 U.S. at page 29, 28 S.Ct. at page 328, the Court, likewise in response to the certified "question of jurisdiction", 209 U.S. at page 30, 28 S.Ct. at page 329, found the jurisdictional facts by taking as true the allegations of the bill and the defendants' petition for removal, and declared: "Both defendants unite, as sufficiently appears by the petition and other proceedings, in resisting the plaintiff's claim of illegality and fraud. They are alleged to have engaged in the same illegal and fraudulent conduct, and the injury is alleged to have been accomplished by their joint action. The plaintiff's controversy is with both, and both are rightfully and necessarily made defendants, and neither can, for jurisdictional purposes, be regarded otherwise than as a defendant. * * * The case of Doctor v. Harrington is precisely in point on this branch of the case, and is conclusive." 209 U.S. at page 32, 28 S.Ct. at page 329.

Recalling that in Cutting v. Woodward, supra, the defendant-president of the corporation was found to have "virtual control of the majority of the board of directors, [who] were ever ready to do his bidding", and the Court of Appeals for this Circuit said: "* * *

this is not a case in which the * * * Company * * * should be realigned as a plaintiff * * *. Here the attitude of the * * * company is hostile to the plaintiffs." 255 F. at page 635. Cf. Gage v. Riverside Trust Co., C.C.S.D.Cal. 1906, 156 F. 1002, 1007; Opici v. Cucamonga Winery, S.D.Cal.1947, 73 F.Supp. 603.

Recalling also that in Koster v. (American) Lumbermens Mutual Co., supra, the Court commented that "jurisdiction is saved in this class of cases by a special dispensation because the corporation is in antagonistic hands. Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606." 330 U.S. at page 523, 67 S.Ct. at page 831.

It would seem *ad extremum* that there can be no fixed rule for alignment of the parties in every case; that at most the binding precedents establish a test by which the court may properly determine when not to align as a party plaintiff in a stockholder's derivative suit the corporation for whose benefit the action is by definition commenced and maintained.

 If the corporation has suffered actionable wrong and is "in antagonistic hands"—*i. e.* so dominated that it is incapacitated to act in keeping with its own financial interests—then a federal court should not, because of such disability, align the corporation with the plaintiff-stockholder in determining whether diversity jurisdiction exists. Cf. City of Indianapolis v. Chase National Bank, supra, 314 U.S. at pages 69–71, 74, 62 S.Ct. 15; Lee v. Lehigh Valley Coal Co., supra, 267 U.S. 542, 45 S.Ct. 385; Hamer v. New York Rys. Co., supra, 244 U.S. at page 274, 37 S.Ct. 511; Helm v. Zarecor, supra, 222 U.S. 32, 32 S.Ct. 10; Venner v. Great Northern Ry., supra, 209 U.S. at pages 32, 35, 28 S.Ct. 328; City of Chicago v. Mills, supra, 204 U.S. at page 326, 27 S.Ct. 286; City of Dawson v. Columbia Trust Co., supra, 197 U.S. at pages 180–181, 25 S.Ct. 420; Doctor v. Harrington, supra, 196 U.S. at page 587, 25 S.Ct. 355;

Lehigh Min. & Mfg. Co. v. Kelly, supra, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; Groel v. United Electric Co., C.C.D.N.J. 1904, 132 F. 252, 261, 265; Laughner v. Schell, 3 Cir., 1919, 260 F. 396, 398; Richardson v. Blue Grass Min. Co., D.C. E.D.Ky.1939, 29 F.Supp. 658, 663; affirmed on opinion below, 6 Cir., 1942, 127 F.2d 291, certiorari denied, 1942, 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515.

The quotation in Venner v. Great Northern Ry., supra, 209 U.S. at page 35, 32 S.Ct. 10, from Illinois Central Railroad Co. v. Adams, supra, 180 U.S. at page 34, 21 S.Ct. 251, suggests an analogy to the disability of an infant or the lack of capacity of an insane person. In Koster v. (American) Lumbermens Mutual Co., supra, 330 U.S. 518, 67 S.Ct. 828, the Court explained that the plaintiff-stockholder sues in protection of the corporation's interest "somewhat as a 'next friend' might do for an individual" because the corporation is "disabled from protecting itself." 330 U.S. at pages 522–523, 67 S.Ct. at page 831. State courts draw upon like analogies. See Reid v. Robinson, supra, 64 Cal.App. at page 55, 220 P. at page 680; Clarke v. Greenberg, supra, 296 N.Y. 146, 71 N.E.2d 443.

*Quaere* whether, followed to logical conclusion, the disability concept does not require that the corporation always be considered either as a real-party-in-interest plaintiff or, if "disabled from protecting itself", a nominal defendant for res judicata purposes, see City of Davenport v. Dows, supra, 78 Wall. 626, not to be aligned on either side in determining jurisdiction. See In re Moore, supra, 209 U.S. 490, 28 S.Ct. 706, 52 L. Ed. 904; Mexican Cent. Ry. Co. v. Eckman, supra, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245; Anglo-California Nat. Bank v. Lazard, supra, 106 F.2d 698; Stout v. Rigney, 8 Cir., 1901, 107 F. 545, 551–552; Merritt v. Greenberg, D.C. E.D.N.Y.1933, 4 F.Supp. 655. Compare: Lavin v. Lavin, 2 Cir., 1950, 182 F.2d 870; Groel v. United Electric Co., supra, 132 F. 252; Tucker v. National Linen

Service Corp., D.C.N.D.Ga.1950, 92 F. Supp. 502, 505, affirmed, 5 Cir., 1951, 188 F.2d 265, certiorari denied, 1951, 342 U.S. 828, 72 S.Ct. 53, 96 L.Ed. 627; Tucker v. New Orleans Laundries, D.C. E.D.La.1949, 90 F.Supp. 290, 292–296, affirmed on opinion below, 5 Cir., 1951, 188 F.2d 263, certiorari denied, 1951, 342 U.S. 828, 72 S.Ct. 52, 96 L.Ed. 627; Cohen v. Industrial Finance Corp., D.C. S.D.N.Y.1941, 44 F.Supp. 489, 490; J. R. A. Corp. v. Boylan, D.C., 30 F.Supp. 393, 394, affirmed on opinion below, 2 Cir., 1940, 109 F.2d 1018; 38 Mich.L. Rev. 724 (1940); see Venner v. Great Northern Ry., supra, 209 U.S. at page 32, 28 S.Ct. 328.

In all events, whether the corporation is under disability and so unable to act otherwise than by domination of alleged wrongdoers is a question of fact in each case. And whenever diversity of citizenship is decided upon the complaint alone, or upon the complaint and petition for removal, the facts alleged in the pleadings as to "absolute control" must of course be taken as true, as was done in Doctor v. Harrington, supra, 196 U.S. at page 582, 587–588, 25 S.Ct. 355, and Venner v. Great Northern Ry., supra, 209 U.S. at pages 29, 32, 28 S.Ct. 328. See Barry v. Edmunds, 1886, 116 U.S. 550, 559, 6 S.Ct. 501, 29 L.Ed. 729; Hartog v. Memory, 1886, 116 U.S. 588, 591, 6 S.Ct. 521, 29 L.Ed. 725.

For a corporation to be "in antagonistic hands", Koster v. (American) Lumbermens Mutual Co., supra, 330 U.S. at page 523, 67 S.Ct. at page 831, or to have a "hostile attitude", Cutting v. Woodward, supra, 255 F. at page 635 such as would permit alignment on the side against its presumptive financial interests, surely requires more than a mere argument or difference of opinion between the corporation and the suing stockholder as to the desirability of bringing the suit. Patently, if difference of opinion were all the "controversy" required to be shown between the stockholder and his corporation in order to preclude alignment of the latter with the plaintiff-stockholder, then there can be no occasion for all the pages of discussion of corporate domination or control, since every stockholder's derivative suit is by definition predicated upon the assumption that the corporation has refused to sue.

By § 2 of Article III, the Constitution extends the federal judicial power "to Controversies * * * between Citizens of different States". This provision of the Constitution "simply gives to the * * * courts the capacity to take jurisdiction * * * it requires an act of Congress to confer it." Kline v. Burke Construction Co., 1922, 260 U.S. 226, 234, 43 S.Ct. 79, 83, 67 L.Ed. 226; Mayor v. Cooper, 1867, 6 Wall. 247, 73 U.S. 247, 252, 18 L.Ed. 851. And by act of Congress jurisdiction has been conferred upon federal district courts "where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between * * * Citizens of different States * * *." 28 U.S.C. § 1332.

The pleading requirements of old Equity Rule 94, 1882, 104 U.S. ix–x; Illinois Cent. R. Co. v. Adams, supra, 180 U.S. at pages 34–35, 21 S.Ct. 251, and later Equity Rule 27, 1913, 226 U.S. 629, 656; Ashwander v. Tennessee Valley Authority, supra, 297 U.S. at page 318, 56 S.Ct. 466, and present Rule 23 (b), Fed.Rules Civ.Proc. rule 23(b), 28 U.S.C.A. have not extended or otherwise altered jurisdiction.

As the Court explained in Venner v. Great Northern Ry., supra: "The jurisdiction * * * is prescribed by laws enacted by Congress in pursuance of the Constitution, and this court by its rules has no power to increase or diminish the jurisdiction thus created, though it may regulate its exercise in any manner not inconsistent with the laws of the United States." 209 U.S. at page 35, 28 S.Ct. at page 331.

Moreover Rule 82 of the Federal Rules of Civil Procedure expressly provides that: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *."

Fed.Rules Civ.Proc. rule 82, 28 U.S.C.A.; see Cohen v. Beneficial Indus. Loan Corp., supra, 337 U.S. at page 556, 69 S.Ct. 1221; Miss. Pub. Corp. v. Murphree, supra, 326 U.S. at pages 444–446, 66 S.Ct. 242.

State-law concepts as to the nature of derivative suits cannot affect federal jurisdiction. Cf. Ballantine, Corporations §§ 145–150 (Rev.Ed.1946); Klopstock v. Superior Court, supra, 17 Cal.2d 13, 108 P.2d 906; Cantor v. Sachs, 1932, 18 Del.Ch. 359, 162 A. 73; see also Otis & Co. v. Pennsylvania R. Co., D.C.E.D.Penn.1944, 57 F.Supp. 680, 683, affirmed on opinion below, 3 Cir., 1946, 155 F. 522.

Nor can federal jurisdiction be enlarged upon the theory that a stockholder's derivative suit is "ancillary" in character. See e. g. Mitchell v. Maurer, supra, 293 U.S. 237, 55 S.Ct. 162; Fulton Nat. Bank v. Hozier, 1925, 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609; Hamer v. N. Y. Rys. Co., supra, 244 U.S. at page 275, 37 S.Ct. 511; Phelps v. Oaks, 1886, 117 U.S. 236, 241, 6 S.Ct. 714, 29 L.Ed. 888; Stewart v. Dunham, 1885, 115 U.S. 61, 64, 5 S.Ct. 1163, 29 L.Ed. 329; Feidler v. Bartleson, 9 Cir., 1908, 161 F. 30, 35; Oils, Inc. v. Blankenship, 10 Cir., 1944, 145 F.2d 354, certiorari denied, 1945, 323 U.S. 803, 65 S.Ct. 562, 89 L.Ed. 641; Johnson v. G. J. Sherrard Co., D.C., 2 F.R.D. 164 (D. Mass.1941); 1 Barron & Holtzoff, supra, § 23; Note, 64 Harv.L.Rev. 968–976 (1951).

It has been settled from the beginning that diversity of citizenship exists only when all parties on one side of the controversy "are citizens of different states from all parties on the other side." City of Indianapolis v. Chase National Bank, supra, 314 U.S. at page 69, 62 S.Ct. at page 17; Hooe v. Jamieson, 1897, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049; Coal Co. v. Blatchford, supra, 11 Wall. at pages 174–175; Strawbridge v. Curtiss, supra, 3 Cranch 267, 2 L.Ed. 435.

And it is equally well settled that the "controversy" relied upon to invoke diversity jurisdiction must be "actual", Helm v. Zarecor, supra, 222 U.S. at page 36, 32 S.Ct. 10, and "substantial", Niles-Bement-Pond Co. v. Iron Moulders Union, supra, 254 U.S. at page 81, 41 S.Ct. 39, so as to constitute a justiceable "controversy" within the meaning of § 2 of Article III of the Constitution. See Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617; Ashwander v. Tennessee Valley Authority, 297 U.S. at pages 318, 324–325, 56 S.Ct. 466; South Spring Hill Gold Min. Co. v. Amador etc. Gold Min. Co., 1892, 145 U.S. 300, 12 S.Ct. 921, 36 L.Ed. 712.

A mere argument then, or even a heated debate, between a shareholder and his corporation over the advisability of bringing suit is not a "controversy" as that term is employed in § 2 of Article III of the Constitution. But even if it were, it is not "the matter in controversy" with respect to which the court is duty-bound to align the parties to the action for the purpose of ascertaining whether requisite diversity of citizenship exists. 28 U.S.C. § 1332.

The "matter in controversy" referred to in 28 U.S.C. § 1332 must be ascertained from the "principal purpose of the suit". East Tenn., V. & G. Railroad v. Grayson, supra, 119 U.S. at page 244, 7 S.Ct. 190, 192. Hence it is the duty of the court, in testing the claim of diversity jurisdiction, to arrange the parties on opposite sides of "the primary and controlling matter in dispute". Merchants' Cotton-Press & Storage Co. v. Insurance Co. of N. A., 1894, 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195; see City of Indianapolis v. Chase Nat. Bank, supra, 314 U.S. at pages 69–70, 62 S.Ct. 15.

The "primary and controlling matter in dispute" in the case at bar is the contract between Warner Bros. and United. That contract is "the matter in controversy".

Only in cases where it appeared that the plaintiff-stockholder's corporation was "in antagonistic hands", Koster v. (American) Lumbermens Mutual Co., supra, 330 U.S. at page 523, 67 S.Ct. at page 831, has the Court found that "difference or collision of interest" between stockholder and corporation as to "the matter in controversy", City of Dawson v. Columbia Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, which precludes alignment of the corporation with the stockholder in determining diversity jurisdiction.

And only in cases where it appeared that the plaintiff-stockholder's corporation was "dominated and controlled" by the alleged wrongdoers, Koster v. (American) Lumbermens Mutual Co., D.C.E.D. N.Y.1945, 64 F.Supp. 595, 596, and so "made to act * * * subservient to some illegal purpose", Doctor v. Harrington, supra, 196 U.S. at page 587, 25 S.Ct. at page 357, or to engage in "the same illegal and fraudulent conduct", Venner v. Great Northern Ry., supra, 209 U.S. at page 32, 28 S.Ct. at page 329, has the Court found the corporation to be "in antagonistic hands."

█ Thus in each case the determinative fact is not whether the directors controlling the corporation are antagonistic to the suing stockholder, but whether those in control are shown to be antagonistic to the financial interests of the corporation.

In each case, moreover, the Court has considered the problem of whether or not the corporation was in "antagonistic hands" to be a question of fact, just as the requisite jurisdictional amount and the citizenship of the parties are questions of fact. See KVOS, Inc., v. Associated Press, supra, 299 U.S. 269, 57 S.Ct. 197; Gilbert v. David, supra, 235 U.S. 561, 35 S.Ct. 164; Pioneer Southwestern Stages v. Wicker, 9 Cir., 1931, 50 F.2d 581; cf. Woodworkers Tool Works v. Byrne, 9 Cir., 1953, 202 F.2d 530. And in each case the record was such as to require the Court, in determining the proper alignment of the parties for jurisdictional purposes, to accept as true the "antagonistic hands" allegations of plaintiff's complaint.

In the case at bar, both the pleadings and the evidence are before the court to aid determination as to whether the case presents "a controversy wholly between citizens of different states, within the jurisdiction of the District Court." Niles-Bement-Pond Co. v. Iron Moulders Union, supra, 254 U.S. at page 82, 41 S.Ct. at page 41. For here a trial was ordered as to the jurisdictional and the statute-of-limitations issues. See Gibbs v. Buck, supra, 307 U.S. at pages 71–72, 59 S.Ct. 725; Gulbenkian v. Gulbenkian, supra, 33 F.Supp. 19.

Trial of these issues required more than fifteen days, a large volume of documentary evidence was received and the reporter's transcript runs some 2000 pages. As the size of this record indicates, the evidence adduced upon the trial of the jurisdictional issues was voluminous and complex, because those issues proved to be in many respects coextensive with issues as to the merits. Cf. Land v. Dollar, supra, 330 U.S. at pages 735, 739, 67 S.Ct. 1009; Calcote v. Texas Pac. Coal & Oil Co., 5 Cir., 1946, 157 F.2d 216, 218, 167 A.L.R. 413, certiorari denied, 1946, 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671; Williams v. Minnesota Min. & Mfg. Co., D.C.S.D.Cal.1952, 14 F.R.D. 1.

█ No useful purpose would be served by relating the evidence in detail. It is sufficient here to say that the proofs adduced upon the trial compel the following findings of fact: (1) That the contract in controversy with United was and is considered by the eleven-man Board of Directors of Warner Bros. to be a sound business arrangement for the best present and future financial interests of the corporation; (2) that in approving and authorizing the contract, the members of the Board of Directors acted in good faith and exercised their independent business judgment; and (3) that at the time of the execution of the contract Albert Warner together with defendants Harry M. and

Jack L. Warner owned less than 20% of the outstanding shares of the corporation; and neither the corporation nor the directors or officers were shown to be at any time under the domination or control of the three brothers Warner.

██ Accordingly, since no "collision of interest" appears between plaintiff and defendant Warner Bros., the corporation will be aligned as a party plaintiff, and as such an alignment shows that the requisite diversity of citizenship does not exist, 28 U.S.C. § 1332, it follows as a matter of law that this court is without jurisdiction over the subject matter of the first cause of action asserted in the complaint.

██ This conclusion necessarily rests upon my understanding of the law: that whenever federal jurisdiction is invoked upon claimed diversity of citizenship in a stockholder's derivative suit, the court is free to inquire into the jurisdictional facts as in other cases and align the parties on either side of the "matter in controversy", and in so doing to determine as a fact whether or not the plaintiff stockholder's corporation is "in antagonistic hands" or so dominated as to be incapacitated to act in its own financial interests.

It is recognized of course that my understanding of the law is in varying degrees at odds with the opinions of others. For example, see the following authorities not heretofore cited. Hutchinson Box & Paper Co. v. Van Horn, 8 Cir., 1924, 299 F. 424, 428–429; Hyams v. Calumet & Hecla Mining Co., 6 Cir., 1915, 221 F. 529, 538; Montro Corp. v. Prindle, D.C.S.D.N.Y.1952, 105 F.Supp. 460; Levitan v. Stout, D.C.W.D.Ky.1951, 97 F.Supp. 105, 113; Smallen v. Louisville Fire & Ins. Co., D.C.W.D.Ky.1948, 80 F.Supp. 279; Cohen v. Industrial Finance Corp., D.C.S.D.N.Y.1941, 44 F. Supp. 489, 490; Nagle v. Wyoga Gas & Oil Corp., D.C.M.D.Pa.1935, 10 F.Supp. 905, 906; Hodgman v. Atlantic Refining Co., D.C.Del.1921, 274 F. 104, 105; Whitaker v. Whitaker Iron Co., D.C.N.D. W.V.1916, 238 F. 980, 990–991, affirmed, 4 Cir., 1918, 249 F. 531, certiorari denied, 1918, 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423; Crawford v. Seattle, R. & S. Ry. Co., D.C.W.D.Wash.1912, 198 F. 920; Howard v. National Telephone Co., C.C.N.D.W.V.1910, 182 F. 215, 220.

In arriving at the conclusions here reached, these opinions and others previously cited have prompted great pause, not only because of the respect I hold for such differing views as to proper interpretation of precedent, but also because of reverence for *stare decisis,* the doctrine of judicial precedent, as the distinctively characteristic institution [Pound, The Spirit of the Common Law, 64–65, 182–183 (1921)], which gives necessary historic continuity to our common-law system of justice. Holmes, Collected Legal Papers, 139 (1920); cf. Marshall v. Baltimore & O. R. R. Co., 1853, 16 How. 314, 57 U.S. 314, 343, 14 L.Ed. 953.

Study has brought the conviction that the views here expressed are not at variance with the authority of any precedent binding this court. Along the pathway to decision doubts have naturally arisen from the cases cited, and from the fact that such scholarly judges as Chief Judge Learned Hand, with his colleagues Judges Chase and Clark of the Second Circuit, and Judge Wyzanski of the District of Massachusetts, appear to have regarded Doctor v. Harrington as fixing a rule—rather than stating a test—for alignment of the stockholder's corporation in derivative suits.

In Lavin v. Lavin, supra, 182 F.2d 870, the Court said: "It may indeed be doubted whether as an original question the Supreme Court would not today align the corporation as a party plaintiff in all cases; nevertheless it has shown no disposition to change the rule in Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606, but has recognized its continued authority." 182 F.2d at page 871.

In Ashley v. Keith Oil Corp., D.C. Mass.1947, 73 F.Supp. 37, 52, Judge Wyzanski wrote: "If the question of federal jurisdiction were an open one;

I should rule that there had not been compliance with the essentials set forth in United States Constitution, Article III, Section 2 and 36 Stat. 1091, 28 U.S.C.A. § 41(1). Disregarding the form of the pleadings in this case, I should conclude that the parties should be realigned according to their real interest. That is, I should treat this as a suit by a Massachusetts corporation against a Massachusetts officer. 2 Moore's Federal Practice, 2272, 2273. Resort to such realignment is admittedly necessary and proper to determine whether in the case at bar there is involved the $3,000 which is a prerequisite to the exercise of diversity jurisdiction. * * * Resort to such realignment seems the only logically consistent course to determine whether in the case at bar there is involved the necessary diversity of citizenship. In addition to such logical considerations, I should have thought weight ought to be given to the fact that 'the dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness * * *.' City of Indianapolis v. Chase National Bank, 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47."

"But", Judge Wyzanski continues, "I am not a free agent. In 1905 the Supreme Court in Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606, held that the realignment which I would have thought proper is inapplicable where the corporation is in antagonistic hands. And only a few months ago, the Supreme Court * * * repeated the same doctrine to sustain federal jurisdiction in Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, [91 L.Ed. 1067]. That was a derivative suit * * * [and] the justices of the Supreme Court in their majority and minority opinions seem to have concluded that diversity of citizenship existed. And, bowing to their judgment, I conclude that diversity of citizenship exists in the case at bar." 73 F.Supp. at pages 52–53.

The very considerations of reason and policy which Judge Wyzanski mentions have prompted a search behind the equivocal language of Doctor v. Harrington to find there a flexible test for alignment of the plaintiff-stockholder's corporation, rather than a rigid rule of doubtful constitutionality. The same considerations have also prompted a look behind the language of Koster v. (American) Lumbermens Mutual Cas. Co., supra, 330 U.S. at page 523, 67 S.Ct. 828, to find a basis on which to conclude that it was never necessary there to reach the question of proper alignment of the corporation for the purpose of ascertaining whether requisite diversity of citizenship existed.

For in Koster the doctrine of *forum non conveniens* was invoked and the first inquiry was "where trial will best serve the convenience of the parties and the ends of justice." 330 U.S. at page 527, 67 S.Ct. at page 833. Trial denotes a hearing and adjudication of issues of law as well as fact. It is axiomatic that a federal court always has "jurisdiction to determine its own jurisdiction", United States v. United Mine Workers, 1947, 330 U.S. 258, 292–293, note 57, 67 S.Ct. 677, 695, 91 L.Ed. 884; Steele v. Culver, supra, 211 U.S. at page 30, 29 S.Ct. 9—the power to determine in every case whether the prerequisites to jurisdiction in fact exist. See Land v. Dollar, supra, 330 U.S. at page 739, 67 S.Ct. 1009; Texas & Pac. Ry. v. Gulf etc. Ry., 1926, 270 U.S. 266, 274, 46 S.Ct. 263, 70 L.Ed. 578.

By the same token where, as in Koster, the doctrine of *forum non conveniens* is invoked, the court in which the action pends has the power to determine, and no doubt should first determine, the *forum conveniens* in which the issues of law and fact, including issues of law and fact as to federal jurisdiction, ought to be tried.

In Koster, the District Court applied the doctrine of *forum non conveniens* and dismissed the action. 64 F.Supp. 595. The Court of Appeals affirmed. 2 Cir., 153 F.2d 888. The Supreme Court

granted certiorari 329 U.S. 700, 67 S.Ct. 61, 91 L.Ed. 611, and at the outset Mr. Justice Jackson explained: "This case involves the special problems of *forum non conveniens* which inhere in derivative actions, and which have been little considered by this Court." 330 U.S. at page 521, 67 S.Ct. at page 830.

The Court then proceeded to affirm the holding below "that the case should not be tried in New York as there was ample remedy available in the state and federal courts of Illinois" [*idem*], thus leaving open for trial in the federal courts of Illinois, if suit were later filed there, all issues of fact and law as to federal jurisdiction presented by Koster's case.

Both logic and sound judicial administration combined to dictate that the proceedings in Koster take such a course. The case at bar is an apt example of the possible breadth of issues of fact and law necessary to be tried in determining whether diversity jurisdiction exists. Cf. Hammerstein v. Superior Court, 1951, 341 U.S. 491, 71 S.Ct. 820, 95 L. Ed. 1135; Layne & Bowler Corp. v. Western Well Works, 1923, 261 U.S. 387, 392–393, 43 S.Ct. 422, 67 L.Ed. 712.

A review of the cases in their historical settings see City of Quincy v. Steel, supra, 120 U.S. at pages 244–246, 7 S. Ct. 520, gives the impression that the equivocal discussion of the problem of diversity jurisdiction in Doctor v. Harrington, supra, 196 U.S. at page 587, 25 S.Ct. 355, resulted from the Court's preoccupation with the problem of collusive suits; that the obvious collusion in Hawes v. Oakland, supra, 104 U.S. at page 461, and the apparent lack of collusion in Greenwood v. Freight Co., supra, 105 U.S. at page 16, prompted Mr. Justice Miller to write opinions which in effect rejected diversity jurisdiction in Hawes and sustained it in Greenwood, without mentioning his well reasoned opinion as Circuit Justice in Arapahoe County v. Kansas Pac. Ry. Co., supra, 1 Fed.Cas. No. 502, p. 1080. But cf. Bourdieu v. Pacific Oil Co., supra, 299 U.S. at pages 70–71, 57 S.Ct. 51, 81 L.Ed. 42.

It is hardly necessary to add that the decision in the case at bar could correctly have consisted of a reference to what Mr. Justice Miller so well said in Arapahoe, for this case is in fact on all fours with Arapahoe insofar as determination of alignment of parties for purposes of diversity jurisdiction is concerned.

In my opinion the Constitution and every relevant consideration of reason and policy join forces to argue that differences of fact alone—and not of law—explain how it was possible for diversity jurisdiction to be sustained in both Arapahoe and Doctor v. Harrington.

This conclusion is reinforced by what was so clearly expounded in Kline v. Burke Construction Co., supra: "The right of a litigant to maintain an action in a federal court on the ground that there is a controversy between citizens of different states is not one derived from the Constitution of the United States, unless in a very indirect sense. Certainly it is not a right *granted* by the Constitution. The applicable provisions, so far as necessary to be quoted here, are contained in article III. Section 1 of that article provides:

" 'The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.' By section 2 of the same Article it is provided that the judicial power shall extend to certain designated cases and controversies and, among them, 'to controversies * * * between citizens of different states. * * *' The effect of these provisions is not to vest jurisdiction in the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general gov-

ernment derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution." 260 U.S. at pages 233–234, 43 S.Ct. at page 82. See Hart, The Power of Congress to Limit the Jurisdiction of the Federal Courts, 66 Harv.L.Rev.1362(1953).

To this should be added the policy stated by Mr. Justice Stone in Healy v. Ratta, 1934, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248: "The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. * * * Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." 292 U.S. at page 270, 54 S.Ct. at page 703. Compare 28 U.S.C. § 1441(c); Lewin, The Federal Court's Hospitable Back Door, 66 Harv.L.Rev. at 423 (1953).

Thus all seeming technicalities surrounding federal jurisdiction based upon claimed diversity of citizenship are actually safeguards against unintended violation of the jurisdiction constitutionally reserved to the states. As the Court expressed it in City of Indianapolis v. Chase National Bank, supra: "These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts." 314 U.S. at page 76, 62 S.Ct. at page 20.

It is more than costly error therefore—it is an unconstitutional invasion of the jurisdiction of the state courts—for a federal court to sustain federal jurisdiction of a civil action between private persons where "the matter in controversy" exceeds the sum or value of $3,000, exclusive of interest and costs, but does not arise "under the Constitution, laws or treaties of the United States", 28 U.S.C. § 1331, and diversity of citizenship as to "the matter in controversy" does not exist. U.S.Const. Art. III; 28 U.S.C. § 1332. See American Fire & Cas. Co. v. Finn, 1951, 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702; Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 671–674, 70 S.Ct. 876, 94 L.Ed. 1194; Shamrock Oil & Gas Corp. v. Sheets, 1941, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214; Shields v. Barrow, supra, 17 How. at page 145.

So whenever the party invoking federal jurisdiction cannot sustain his burden of proof to show existence of "the grounds upon which the court's jurisdiction depends", Fed.Rules Civ.Proc. rule 8(a, b), 28 U.S.C.A.; KVOS, Inc., v. Associated Press, supra, 299 U.S. at page 278, 57 S.Ct. 197; McNutt v. Gen. Motors etc. Corp., supra, 298 U.S. at pages 187–190, 56 S.Ct. 780; Seslar v. Union Local 901, supra, 186 F.2d at page 407; 1 Barron & Holtzoff, supra, § 352 (1952 Supp.), the proper order always is to dismiss the action for lack of jurisdiction, regardless of whether the factual issues involved in this determination be simple or complex, since when "beyond the Constitution * * * every act must be a violation of duty, an usurpation." Marshall v. Baltimore & O. R. R. Co., supra, 16 How. at page 343.

Dismissal in the federal courts for lack of jurisdiction can in no way prejudice the bringing of the action in a court of competent jurisdiction, because a judgment of dismissal for want of jurisdiction is not res judicata as a final decision upon the merits and consequently does not bar a subsequent action. Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 490, 39 S.Ct. 533, 63 L.Ed. 1099; Smith v. McNeal, 1883, 109 U.S. 426, 429–430, 3 S.Ct. 319, 27 L.Ed. 986; Hughes v. United States, 1866, 4 Wall. 232, 71 U.S. 232, 237, 18 L.Ed. 303; Walden v. Bodley, 1840, 14 Pet. 156, 39 U.S.

156, 10 L.Ed. 398; Bunker-Hill & Sullivan Min. & C. Co. v. Shoshone Min. Co., 9 Cir., 1901, 109 F. 504, 507.

So also the findings of this court which serve as predicate for the conclusion that the plaintiff-stockholder's corporation is not in "antagonistic hands" cannot operate to bar contrary findings by a court having plenary jurisdiction of the case, since the collateral estoppel doctrine is not applicable to such interlocutory or "incidental" determinations of fact, Restatement, Judgments § 71 (1942); Scott, Collateral Estoppel By Judgment, 56 Harv.L.Rev. 1, 18–22 (1942); cf. United States v. International Bldg. Co., 1953, 345 U.S. 502, 504–505, 73 S.Ct. 807; Zank v. Landon, 9 Cir., 1953, 205 F.2d 615; Sachs v. Ohio Nat. Life Ins. Co., 7 Cir., 1945, 148 F.2d 128, 158 A.L.R. 688; certiorari denied, 1945, 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452; Musher Foundation v. Alba Trading Co., 2 Cir., 1942, 127 F.2d 9, 11, certiorari denied, 1942, 317 U.S. 641, 63 S. Ct. 33, 87 L.Ed. 517; contra: Simmons v. Superior Court, 1950, 96 Cal.App.2d 119, 125, 214 P.2d 844, 849, 19 A.L.R.2d 288, made in the exercise of the power to determine jurisdiction. Land v. Dollar, supra, 330 U.S. at page 735, 67 S. Ct. 1009.

What has been said relates to the first cause of action. It remains to consider whether this court has jurisdiction over the second cause of action which the plaintiff-stockholder asserts against defendants Harry M. and Jack L. Warner only, omitting defendants United and Sperling.

There exists diversity of citizenship as to the second cause of action unless United is an indispensable or necessary party to it, for without United the "matter in controversy" would be between the New York plaintiff-stockholder and his Delaware corporation, Warner Bros., both aligned on one side, with the two brothers Warner, citizens of California, aligned on the other.

In essence, this second count or claim is that by causing United States Pictures, Inc., a Delaware corporation, to be formed, and by causing defendant Warner Bros. to enter into the challenged contract with United, the two defendant-directors allowed the assets of Warner Bros. to be dissipated for the benefit of United and Sperling; and that this failure of the individual defendants to live up to their fiduciary duties as directors of Warner Bros. caused large pecuniary loss to the corporation.

Thus plaintiff asks this court, in the exercise of its equity jurisdiction, to render a money judgment for damages in favor of defendant Warner Bros. based upon the allegedly improvident and fraudulent contract with United, while leaving the contract in force to govern future relationships between United and Warner Bros., merely because plaintiff has chosen for reasons of his own to name United as a party defendant to the first cause of action but not to the second. Cf. Twist v. Prairie Oil Co., 1927, 274 U.S. 684, 689–692, 47 S.Ct. 755, 71 L.Ed. 1297.

It is true of course that whenever diversity jurisdiction exists, plaintiff's "motive in preferring a Federal tribunal is immaterial." City of Chicago v. Mills, supra, 204 U.S. at page 330, 27 S.Ct. at page 289; Blair v. Chicago, 1906, 201 U.S. 400, 448–449, 26 S.Ct. 427, 50 L.Ed. 801. But even when diversity jurisdiction exists, the case may not be such as to warrant exercise of the equity jurisdiction of the court. See Matthews v. Rodgers, 1932, 284 U.S. 521, 524, 52 S.Ct. 217, 76 L.Ed. 447; Twist v. Prairie Oil Co., supra, 274 U.S. at page 690, 47 S.Ct. 755; Venner v. Great Northern Ry., supra, 209 U.S. at page 34, 28 S.Ct. 328; Reynes v. Dumont, 1889, 130 U.S. 354, 395, 9 S.Ct. 486, 32 L.Ed. 934.

As the Court observed in Twist v. Prairie Oil Co., supra, "the objection that the case is not within the equity jurisdiction * * * does not go to the power of the court as a federal court." 274 U.S. at page 691, 47 S.Ct. at page 757.

So in the case at bar, although diversity jurisdiction may exist as to the

second cause of action, the question still remains whether the second cause of action is within the equity jurisdiction of this court; and the answer to that question turns upon whether or not United is an indispensable party to proper adjudication of the second cause of action.

Rule 19(a) of the Federal Rules of Civil Procedure does not attempt affirmatively to define who are indispensable parties, but does restate existing law. Fed.Rules Civ.Proc. rule 19, 28 U.S.C.A.; Wesson v. Crain, 8 Cir., 1948, 165 F.2d 6, 8–9; Chidester v. City of Newark, 3 Cir., 1947, 162 F.2d 598, 600; Young v. Garrett, 8 Cir., 1945, 149 F.2d 223, 228; Cather v. Ocean Acc. etc. Co., D.C.Neb. 1950, 94 F.Supp. 511, 514–515.

Rule 19(b) provides that: "When persons * * * who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue * * *. The court in its discretion may proceed in the action without making such persons parties, if * * * their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons." Fed.Rules Civ.Proc. rule 19(b), 28 U.S. C.A.; cf. Louisville C. & C. R. Co. v. Letson, supra, 43 U.S. at pages 555–556.

Hence Rule 19(b) permits the court, in the exercise of discretion, either to proceed or not proceed to judgment without absent parties "who ought to be parties if complete relief is to be accorded between those already parties". See Bourdieu v. Pacific Oil Co., supra, 299 U.S. at pages 70–71, 57 S.Ct. 51; State of California v. Southern Pac. Co., 1895, 157 U.S. 229, 255, 15 S.Ct. 591, 39 L.Ed. 683.

While not an indispensable party in the sense of "having a joint interest" and for that reason subject to "necessary joinder" by the terms of Rule 19(a), United is clearly a person who "ought to be" a party within the meaning of Rule 19(b). In the language of Niles-Bement-Pond Co. v. Iron Moulders

Union, supra: "There is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not; but a rule early announced and often applied by this court is sharply applicable to the case at bar. In Shields v. Barrow, 17 How. [129] 130, 139, 15 L.Ed. 158, this language * * * was used to describe parties so indispensable that a court of equity will not proceed to final decision without them, viz.:

" 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' " 254 U.S. at page 80, 41 S.Ct. at page 41. See: State of Washington v. United States, 9 Cir., 1936, 87 F.2d 421, 427–428; I.C.C. v. Blue Diamond etc. Co., 8 Cir., 1951, 192 F.2d 43, 47.

No extended discussion is necessary to point out why a decree by this court as to the second cause of action without the presence of United before the court would leave the controversy "in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields v. Barrows, supra, 17 How. at page 139.

It is therefore my opinion that, as to the second cause of action, United is one of the "parties so indispensable that a court of equity will not proceed to final decision without them," Niles-Bement-Pond Co. v. Iron Moulders Union, supra, 254 U.S. at page 80, 41 S.Ct. at page 41; cf. Lee v. Lehigh Valley Coal Co., supra, 267 U.S. at page 543, 45 S.Ct. 385; Walden v. Skinner, supra, 101 U.S. at page 589; Wormley v. Wormley, supra, 8 Wheat. at page 45; Arapahoe County v. Kansas Pac. Ry. Co., supra, 1 Fed.Cas. pp. 1082–1083, since "a final decree could not be made without * * * leaving the controversy in a condition wholly inconsistent with that equity which seeks to put an end to litigation by doing complete and final justice". Niles-Bement-Pond Co. v. Iron Moulders

Union, supra, 254 U.S. at page 81, 41 S. Ct. at page 41.

The doctrine of pendent jurisdiction, even if applicable here, could not operate to alter the conclusion just stated. See, seriatim Osborn v. Bank of United States, supra, 9 Wheat. at pages 822–823; Siler v. Louisville & N. R. R. Co., 1909, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Hurn v. Oursler, 1933, 289 U.S. 238, 245–246, 53 S.Ct. 586, 77 L.Ed. 1148; Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 1951, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912.

Accordingly the second cause of action will be dismissed for want of equity, Mallow v. Hinde, 1827, 12 Wheat. 193, 25 U.S. 193, 199, 6 L.Ed. 599, and the judgment of dismissal shall expressly declare that it does not operate "as an adjudication upon the merits" and is without prejudice or res judicata effect. See Fed.Rules Civ.Proc. rule 41(b), 28 U.S.C.A.; Barney v. Baltimore, supra, 6 Wall. at pages 284–285, 287, 289.

Discretion to dismiss is exercised in the face of high probability that plaintiff will confront a plea of the bar of a three-year statute of limitations in the event this suit should now be filed in a California court of competent jurisdiction. See Cal.Code Civ.Proc. §§ 335, 338(4), 359, 361; Bovay v. H. M. Byllesby & Co., supra, 27 Del.Ch. 381, 38 A.2d 808.

If the action were not already barred when commenced here, the courts of California might hold that the applicable statute of limitations was tolled during the pendency in this court, since it is the policy of the California law, as expressed in § 396 of the Code of Civil Procedure, that: "If an action or proceeding is commenced in a court which lacks jurisdiction of the subject matter thereof, as determined by the complaint or petition, if there is a court of this State which has such jurisdiction, the action or proceeding shall * * * be transferred to a court having jurisdiction of the subject matter * * *." See Morgan v. Somervell, 1940, 40 Cal.App.2d 398, 104 P.2d 866.

The literal terms of this statute preclude its application to an action brought in a federal court, as there is no machinery for transfer such as the statute requires. Cal.Code Civ.Proc. § 396. Resort may be had, however, to reasoning by analogy from the statute. This common-law technique involves the age-old principle of the "equity of the statute," requiring that a legislative enactment be treated as a declaration of policy which serves as precedent in analogous situations not expressly covered by the statute itself.

■ The equity-of-the-statute principle presupposes that the legislature-made precedent is entitled to recognition comparable to that accorded judge-made precedent, and application of the principle necessarily invokes the concept of *stare decisis* to employ the statute as a precedent-making declaration of legislative policy. See United States v. Freeman, 1845, 3 How. 556, 44 U.S. 556, 565, 11 L.Ed. 724; Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 12 (1936); Landis, Statutes and the Sources of Law, Harvard Legal Essays, 213, 214–218 (1934); Pound, Common Law and Legislation, 21 Harv.L.Rev. 386 (1908). As Mr. Justice Frankfurter observed upon dissenting in Pope v. Atlantic Coast Line R. Co., 1953, 345 U.S. 379, 73 S.Ct. 749; "Statutes * * * are not to be deemed self-enclosed instances; they are to be regarded as starting points of reasoning, as means for securing coherence and for effectuating purpose." 345 U.S. at page 390, 73 S.Ct. at page 755. Cf. United States v. Atlantic Mutual Ins. Co., 1952, 343 U.S. 236, 245–249, 72 S.Ct. 666, 671–673, 96 L.Ed. 907 (dissenting opinion); Panama R. R. Co. v. Rock, 1924, 266 U.S. 209, 215–216, 45 S.Ct. 58, 59–60, 69 L.Ed. 250 (dissenting opinion); Johnson v. United States, 1 Cir., 1908, 163 F. 30, 32, 18 L.R.A.,N.S., 1194, Holmes, Circuit Justice.

In considering the availability of a state court of competent jurisdiction to redress plaintiff's grievances which are asserted in the second cause of action, it should be remarked that there are now pending in the Supreme Court of New York County, New York, nine derivative suits by stockholders of Warner Bros.

**812**

similar to that at bar, none of which are on calendar and most of which have long been stayed because of failure of compliance with the New York court's order for security for costs. See N.Y.General Corporation Law, McK.Consol. Laws, c. 23, § 61; Shielcrawt v. Moffett, 1945, 294 N.Y. 180, 61 N.E.2d 435, 159 A.L.R. 971; Noel Associates, Inc., v. Merrell, 1944, 184 Misc. 646, 53 N.Y.S.2d 143, Fed. Rules Civ.Proc. rule 23, Notes of Advisory Committee, 28 U.S.C.A.

And it should be noted also that any stockholder's derivative suit filed in the California courts must confront the possibility that security for costs may now be required in such cases. See Cal.Corp. Code, § 834, Stats.1949, p. 857; Comment, 1 U.C.L.A.Lev. 79–92 (1953); cf. Cohen v. Beneficial Ind. Loan Corp., supra, 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed. 1528.

The conclusions reached as to the jurisdictional issues make it unnecessary to express any opinion on the issues raised by defendant's plea of the bar of applicable statutes of limitations.

Defendants will lodge with the Clerk proposed findings of fact, conclusions of law and judgment of dismissal pursuant to local rule 7 within ten days.